| United States Bankruptcy Court | Voluntary Petition |
|---|---|
| **DISTRICT OF** *NEW HAMPSHIRE* | |

| Name of Debtor (if individual, enter Last, First, Middle):<br>*EnviroLogic, LLC,*<br>*a New Hampshire LLC* | Name of Joint Debtor (Spouse)(Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>*NONE* | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) Complete EIN<br>(if more than one, state all): *20-5642390* | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>*25 Buttrick Rd., Unit D2*<br>*Londonderry NH*  ZIPCODE *03053* | Street Address of Joint Debtor (No. and Street, City, and State):  ZIPCODE |
| County of Residence or of the<br>Principal Place of Business: *Rockingham* | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>*SAME*  ZIPCODE | Mailing Address of Joint Debtor (if different from street address):  ZIPCODE |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): *SAME*  ZIPCODE | |

**Type of Debtor** (Form of organization)

(Check **one** box.)

☐ Individual (includes Joint Debtors)
*See Exhibit D on page 2 of this form.*
☒ Corporation (includes LLC and LLP)
☐ Partnership
☐ Other (if debtor is not one of the above entities, check this box and state type of entity below

**Nature of Business**
(Check **one** box.)

☐ Health Care Business
☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
☐ Railroad
☐ Stockbroker
☐ Commodity Broker
☐ Clearing Bank
☒ Other *environmental consultant*

**Tax-Exempt Entity**
(Check box, if applicable.)

☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)

☒ Chapter 7
☐ Chapter 9
☐ Chapter 11
☐ Chapter 12
☐ Chapter 13
☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts** (Check one box)

☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose"
☒ Debts are primarily business debts.

**Chapter 11 Debtors:**

**Check one box:**
☐ Debtor is a small business as defined in 11 U.S.C. § 101(51D).
☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

**Check if:**
☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 (amount subject to adjustment on 4/01/13 and every three years thereafter).

**Check all applicable boxes:**
☐ A plan is being filed with this petition
☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Filing Fee** (Check one box)

☒ Full Filing Fee attached
☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Statistical/Administrative Information**

☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>*EnviroLogic, LLC,*<br>*a New Hampshire LLC* |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years**     (If more than two, attach additional sheet) |||
|---|---|---|
| Location Where Filed:<br>*NONE* | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor**     (If more than one, attach additional sheet) |||
|---|---|---|
| Name of Debtor:<br>*NONE* | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under Chapter 11)<br><br>☐  Exhibit A is attached and made a part of this petition | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>**X** _____   *8/ 9/2010*<br>Signature of Attorney for Debtor(s)                          Date |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and exhibit C is attached and made a part of this petition.

☒  No

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐  Exhibit D completed and signed by the debtor is attached and made part of this petition.

If this is a joint petition:

☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**

(Check any applicable box)

☒  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**

(Check all applicable boxes.)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____

(Name of landlord that obtained judgment)

_____

(Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | *EnviroLogic, LLC,*<br>    *a New Hampshire LLC* |

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b)

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** _____
Signature of Debtor

**X** _____
Signature of Joint Debtor

_____
Telephone Number (if not represented by attorney)

_____
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed name of Foreign Representative)

*8/ 9/2010*
(Date)

### Signature of Attorney*

**X** */s/ Nancy H. Michels*
Signature of Attorney for Debtor(s)

*Nancy H. Michels 01325*
Printed Name of Attorney for Debtor(s)

*Michels & Michels*
Firm Name

*PO Box 980*
Address

*25 Nashua Rd.*

*Londonderry NH  03053-0980*

*(603) 434-1717*
Telephone Number

*8/ 9/2010*
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**X** */s/ Richard J. Wozmak*
Signature of Authorized Individual

*Richard J. Wozmak*
Printed Name of Authorized Individual

*Manager*
Title of Authorized Individual

*8/ 9/2010*
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re *EnviroLogic, LLC, a New Hampshire LLC*

Case No.
Chapter *7*

_____ / Debtor

Attorney for Debtor: *Nancy H. Michels*

# STATEMENT PURSUANT TO RULE 2016(B)

The undersigned, pursuant to Rule 2016(b), Bankruptcy Rules, states that:

1. The undersigned is the attorney for the debtor(s) in this case.

2. The compensation paid or agreed to be paid by the debtor(s), to the undersigned is:
   a) For legal services rendered or to be rendered in contemplation of and in connection with this case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ *4,701.00*
   b) Prior to the filing of this statement, debtor(s) have paid . . . . . . . . . . . . . . $ *4,701.00*
   c) The unpaid balance due and payable is . . . . . . . . . . . . . . . . . . . . . . . . . $ *0.00*

3. $ *299.00* of the filing fee in this case has been paid.

4. The Services rendered or to be rendered include the following:
   a) Analysis of the financial situation, and rendering advice and assistance to the debtor(s) in determining whether to file a petition under title 11 of the United States Code.
   b) Preparation and filing of the petition, schedules, statement of financial affairs and other documents required by the court.
   c) Representation of the debtor(s) at the meeting of creditors.

5. The source of payments made by the debtor(s) to the undersigned was from earnings, wages and compensation for services performed, and
   *None other*

6. The source of payments to be made by the debtor(s) to the undersigned for the unpaid balance remaining, if any, will be from earnings, wages and compensation for services performed, and
   *None other*

7. The undersigned has received no transfer, assignment or pledge of property from debtor(s) except the following for the value stated:
   *None*

8. The undersigned has not shared or agreed to share with any other entity, other than with members of undersigned's law firm, any compensation paid or to be paid except as follows:
   *None*

9. Additional Services
   *Provided at attorney's regular hourly rate.*

Dated: *8/ 9/2010*                    Respectfully submitted,

X */s/ Nancy H. Michels* _____

Attorney for Petitioner: *Nancy H. Michels*
*Michels & Michels*
*PO Box 980*
*25 Nashua Rd.*
*Londonderry NH  03053-0980*
*(603) 434-1717*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:   EnviroLogic, LLC                                BK. No.: 10-
                                                         Chapter 7

**VERIFICATION OF CREDITOR MATRIX**

     The above named debtor(s), or debtor's attorney, if applicable, do hereby certify under penalty of perjury that the attached Master Mailing list of creditors, consisting of 5 pages are complete, correct and consistent with the debtor's schedules pursuant to Local Bankruptcy Rules and I/we assume all responsibility for errors and omissions.

DATED:  August 9, 2010                    Signed:   /s/ EnviroLogic, LLC
                                                    By:  Richard J. Wozmak, Manager
                                                    (Debtor)

                                          Signed:  /s/
                                                    (Joint Debtor)

American Express
PO Box 1270
Newark, NJ  07101

Bay Street Neighborhood, LLC
c/o McRoberts & Roberts, LLP
15 Broad St, Ste. 240
Boston, MA  02109

Bernstein Shur
PO Box 9729
Portland, ME  04104-5029

Buttrick Road Office Park LLC
1E Commons Dr., Unit 30
Londonderry, NH  03053

Byrce Creative
467 Haley Road
Kittery Point, ME  03905

CaDSC, Inc.
PO Box 828
Ipswich, MA  01938

Chase
PO Box 15153
Wilmington, DE  19886

Chemserve
317 Elm Street
Milford, NH  03055

Comcast
PO Box 1577
Newark, NJ  07101

Commonwealth Tank, Inc.
84 New Salem St.
Wakefield, MA  01880

```
EMSL Analytical
7 Constitution Way, Suite 107
Woburn, MA  01801


ESMI
67 International Drive
Loudon, NH  03307


Forman, Corcoran & Assoc
PO Box 1330
Londonderry, NH  03053


Harleysville
PO Box 37712
Philadelphia, PA  19101


Institute for Environmental Ed
16 Upton Dr.
Wilmington, MA  01887


Shepard S. Johnson, Jr.
28 Pleasant St., Ste. 428
New Bedford, MA  02740


Lakeside Vista LLC
50 Dodge St.
Beverly, MA  01915


Lakeside Vista LLC
628 Pleasant St, Ste. 428
New Bedford, MA  02740
```

James W. Marsh, Esquire
28 Pleasant St., Ste. 428
New Bedford, MA  02740


MCE
116 John Street
Lowell, MA  01852


McRoberts & Roberts
10 Newton Street
Cambridge, MA  02139


Moriarty's Fence Company
PO Box 647
Portsmouth, RI  02871


PHD Communications
570 Willow St.
Manchester, NH  03103


Postal Center of Londonderry
123 Nashua Road, #17
Londonderry, NH  03053


R.I. Analytical
41 Illinois Avenue
Warwick, RI  02888


R.I. Resource Recovery Corp.
PO Box 847475
Boston, MA  02284

```
RI Dept. of Environmental
235 Promenade St.
Providence, RI  02908-5767


Adam D. Rogoff, Esquire
31 Conway St., Ste. 2
Boston, MA  02131


David P. Russman, Esquire
33 Bellevue St., Ste. 1
Boston, MA  02125


St. Mary's Bank
PO Box 990
Manchester, NH  03105-0990


St. Mary's Bank
50 Nashua Rd.
Londonderry, NH  03053


Tantara Corp.
54 Mason Street
Worcester, MA  01610


Technical Drilling Services
PO Box 10
2 Peter Drive
Sterling, MA  01564


Todd & Weld LLP
28 State St.
Boston, MA  02109
```

U.S. Environmental Rental
166 Riverview Avenue
New Town, MA  02456


Verizon Wireless
PO Box 15062
Albany, NY  12212-5062


Waste Management
26 Patriot Place, Ste. 300
Foxboro, MA  02035


Wells Fargo Financial Leasing
PO Box 6434
Carol Stream, IL  60197


Richard J. Wozmak
137 McEvoy Dr.
Auburn, NH  03032

### STATE OF NEW HAMPSHIRE

Fee for Form LLC 1A:     $ 50.00
Filing fee:              $ 50.00
Total fees               $100.00
Use black print or type.
Leave 1" margins both sides.

Form No. LLC 1
RSA 304-C:12

## CERTIFICATE OF FORMATION
## NEW HAMPSHIRE LIMITED LIABILITY COMPANY

THE UNDERSIGNED, UNDER THE NEW HAMPSHIRE LIMITED LIABILITY COMPANY LAWS SUBMITS THE FOLLOWING CERTIFICATE OF FORMATION:

FIRST:      The name of the limited liability company is:

EnviroLogic, LLC

SECOND:     The nature of the primary business or purposes are:

To provide environmental consulting and any other purpose not prohibited by law.

THIRD:      The name of the limited liability company's registered agent is:

Fred J. Forman
74 Gilcreast Road, P.O. Box 1330
Londonderry, NH 03053-1330

FOURTH:     The latest date on which the limited liability company is to be dissolved is: None

FIFTH:      The management of the limited liability company is vested in a manager or managers.

Dated:          September 29, 2006

Signature of Managers,
or member if no Manager:   

Print or Type Name:     Richard J. Wozmak

Title:          Manager

State of New Hampshire
Form LLC 1 - Certificate of Formation 2 Page(s)

T0627527080

# Form SRA – Addendum to Business Organization and Registration Forms
## Statement of Compliance with New Hampshire Securities Laws

**Part I – Business Identification and Contact Information**

Business Name: EnviroLogic, LLC

Business Address (include city, state, zip): 50 Nashua Road, Suite 302, Londonderry, New Hampshire 03053

Telephone Number: ( 603 ) 421-2777          E-mail:

Contact Person: Richard J. Wozmak

Contact Person Address (If Different):

**Part II– Check _ONE_ of the following items in Part II** If more than one item is checked, this form will be rejected.
[PLEASE NOTE: Most small businesses registering in New Hampshire qualify for the exemption in Part II, Item 1 below. However, you must insure that your business meets all of the requirements spelled out in A), B) and C)]:

1. [X]  Ownership interests in this business are exempt from the registration requirements of the state of New Hampshire because the business meets _ALL_ of the following three requirements:

    A) This business has _10 or fewer owners_; and
    B) Advertising _relating to the sale of ownership interests_ has not been circulated; and
    C) Sales of ownership interests – if any – will be _completed within 60 days_ of the formation of this business.

2. [ ]  This business will offer securities in New Hampshire under another exemption from registration or will notice file for federal covered securities. Enter the citation for the exemption or notice filing claimed - _____.

3. [ ]  This business has registered or will register its securities for sale in New Hampshire. Enter the date the registration statement was or will be filed with the Bureau of Securities Regulation - _____.

4. [ ]  This business was formed in a state other than New Hampshire and will not offer or sell securities in New Hampshire.

**Part III – Check _ONE_ of the following items in Part III:**

1. [X]  This business _is not_ a New Hampshire corporation or limited partnership. (_ALL_ LLC's should check this item.)

2. [ ]  This business _is_ a New Hampshire corporation or limited partnership and the articles of incorporation or certificate of limited partnership states whether capital stock or interests will be sold or offered for sale.

**Part IV – Certification of Accuracy**

(NOTE: The information in Part IV must be certified by: 1) all of the incorporators of a corporation to be formed; or 2) an executive officer of an existing corporation; or 3) all of the general partners or intended general partners of a limited partnership; or 4) one or more authorized members or managers of a limited liability company; or 5) one or more authorized partners of a registered limited liability partnership or foreign registered limited liability partnership.)

I (We) certify that the information provided in this form is true and complete.    (Original signatures _only_)

Name (print): Richard J. Wozmak          Signature: _[signature]_

Name (print): _____          Signature: _____

Name (print): _____          Signature: _____

Date: 9/29/06

# LEASE

WHEREAS, **Buttrick Road Office Park LLC., It successors and or Assigns (LANDLORD)** is the owner under Long Term Lease rights of certain office buildings located at BUTTRRICK ROAD PROFESSIONAL OFFICE PARK, 25 Buttrick Road Londonderry, New Hampshire; And

WHEREAS, **EnviroLogic LLC, (TENANT)**, whose principal place of business is located at 50 Nashua Road, Suite 205, Londonderry, NH , would like to lease a portion of Landlord's office building at 25 Buttrick Road Londonderry, New Hampshire,

It is agreed as follows:

**l. PREMISES.** Landlord leases to Tenant, together with the right to the non-exclusive use of common areas as further described in Paragraph 6 and Tenant rents from Landlord, ground level, approximately 1575 square feet of first floor office space, more particularly identified as **UNIT 2 BUILDING D , BUTTRICK ROAD PROFESSIONAL OFFICE PARK,** with the mailing address at **25 Buttrick Road Londonderry, New Hampshire, Unit D-2**

All leasable space for the purposes of this Lease shall be described herein as Office.

## 2. TERM.

A. The term of this Lease shall be for a period of **thirty-six (36) calendar months**, plus the number of days remaining in the calendar month in which the lease commences. The term shall commence ten (10) days after the date on which the Premises is ready for occupancy and the Tenant is in receipt of such notice as stated in Paragraph 2c below. The Landlord shall make his best effort to bring about an occupiable building on or about _August 1, 2009.

B. Tenant, prior to commencement of the Term, may be permitted to install fixtures and other equipment and do other work; provided, however, that such activities of Tenant shall not unreasonably interfere with the normal conduct of business in the remainder of the building or other tenants in the building.

C. The Premises shall be deemed to be ready for occupancy by Tenant on the date of issuance of an occupancy permit for said unit. Said occupancy permit shall be based upon the work Landlord's work as described in Exhibit C, which is attached hereto.

## 3. ANNUAL RENT.

A. Beginning with the commencement date and continuing thereafter during the Term, Tenant covenants and agrees to pay to Landlord, without deductions, setoff or abatement, except as provided herein, an Annual Rent payable in advance, as follows:

B. For the first 3 years of the term hereof, Tenant shall pay to Landlord, at its office or at such other place as designated by notice to Tenant in writing, rent per the following schedule:

| ANTICIPATED OFFICE SPACE | DOLLAR AMOUNT |
|---|---|
| Area = 1575 square feet | $13.00 per square foot |

C. The **base rent** shall be as follows:

a. IN THE FIRST YEAR OF THE LEASE, based upon Tenant's square footage, the expected minimum annual rent payable is $ 20,475.00 payable monthly and proportionately at the rate of $ 1,706.25 per month payable in advance on the first day of each calendar month during the original term of the lease.

b. IN THE SECOND YEAR OF THE LEASE, the expected minimum annual rent payable is $ 20,475.00 payable in advance on the first day of each month, in equal monthly installments of $ 1,706.25

c. IN THE THIRD YEAR OF THE LEASE, the expected minimum annual rent payable is $ 20,475.00 payable in advance on the first day of each month in twelve equal monthly installments of $ 1,706.25

**4. RENEWAL** Provided the tenant is not in default, the Tenant shall have the option to renew this Lease at the third year's rate for an additional 3-year term under the same terms and conditions including 3 % annual increases of the base rent

**5. ADDITIONAL RENT - TAXES.** The Tenant shall pay monthly, in advance, the real estate taxes assessed against the property determined by multiplying the total real estate taxes assessed by a fraction, the numerator of which shall be the number of square feet of leasable area in the Premises and the denominator shall be the number of square feet in the buildings, which percentage equals 6.58%.("Pro-Rata Share") of the total tax bill.. During the first year of the Lease, Tenant's annual real estate tax is estimated at $2.50 per square foot of the Premises. On receipt of the tax bill for each year, the Tenant's share shall be adjusted with respect to over or under payment on the first day of the next month. Tenant shall receive credit for any tax abatement after the cost of obtaining the same.

**6. ADDITIONAL RENT – MAINTENANCE OF COMMON AREAS – TENANTS CONTRIBUTION.**

A. Landlord shall cause all common areas, including the parking facilities, sidewalks and lighting, to be maintained in good repair and clean condition at all times during the term of this lease. Accumulations of snow will be removed from the parking areas and sidewalks, and will be deposited in the designated snow storage areas.

B. Landlord agrees that Tenant may have during the term, with others, the non-exclusive right to use parking facilities which may from time to time be available for the parking of vehicles of Tenant, its officers, agents, employees and customers while on the Premises; but it is agreed that Landlord shall have the right to designate and to change (including elimination of portions at Landlord's sole discretion), from time to time, the location, size, shape and direction of common areas, parking facilities, sidewalks and traffic lanes so long as reasonable access is maintained to the building. The Landlord's right includes the right to grant easements in the common areas for utilities to such buildings. Tenant agrees to cause its employees to park their motor vehicles only in such areas as Landlord may designate as employee parking areas; Any employee of Tenant who parks other than in a designated employee parking area may have his car towed at Tenant's expense.

C. All parts of the common areas shall be maintained (including lighting and heat) by Landlord in a reasonably neat and clean condition.

D. All expenses of every kind paid or incurred by Landlord in operating, managing, equipping, policing, lighting, repairing, replacing and maintaining all common area parking facilities (including any parking structure subsequently installed for the common use of customers and employees), sidewalks, enclosed portions of the building and all other common areas (including, but without limitation all landscaping and gardening) shall be prorated, and Tenant shall pay its Pro-Rata Share; provided, nevertheless, that Tenant shall pay an estimated amount of One Dollar fifty cents ($1.50) per square foot based upon its lease space as its Pro-Rata Share of the common area expenses., in the first year of the Lease; and thereafter shall pay its Pro-Rata Share plus increases over the lease year base. Such expenses shall likewise include (but shall not be limited to) water and sewer/septic service, septic and sewer repairs or charges; premiums for liability, property damage, fire, workmen's compensation, and all other insurance carried by Landlord with respect to the building; wages, unemployment taxes, social security taxes, personal property taxes and assessments; but there shall be excluded costs of equipment properly chargeable to capital account and depreciation of the buildings, parking facilities, and other common areas. Tenant's Pro Rata Share of all of the above expenses set forth in 6.D. shall not increase by more than 3% in any one 12 month period.

E. Tenant's Pro-Rata Share of the maintenance expenses shall be paid in monthly installments, in the amount estimated by Landlord, in advance on the first day of each calendar month. Within ninety (90) days after the end of each calendar year, Landlord shall furnish Tenant a written statement in reasonable detail setting forth the computation of the total expenses. The parties shall make a prompt adjustment of the account. Failure to make prompt payment shall render the Tenant to the same penalties as described in Paragraph 7 below.

**7. LATE PAYMENT**. If any payment to become due hereunder shall remain unpaid for a period of five (5) days, Landlord shall have the right to charge Tenant a late charge of five percent (5%) of amount due for each monthly payment in arrears. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

**8. UTILITIES.** Tenant shall pay for all of its requirements for utilities, including, but not limited to propane gas, water, electricity, telephone, sewer charges, and the like, including all utilities necessary for heating and air conditioning the building.

A. **9. USE OF PREMISES.** The leased Premises shall be used by the Tenant solely for professional offices, and other services related to thereof. Tenant agrees to conform to the following provisions:

B. No auction, fire, or bankruptcy sale may be conducted without the prior written consent of the Landlord;

C. Tenant shall not use the hallways or sidewalks adjacent to the Premises for any purpose without the prior written consent of the Landlord;

D. Tenant shall receive and deliver goods and merchandise only in the manner and at such times as may be reasonably designated by the Landlord;

E. All trash, refuse, and the like, shall be disposed properly in the dumpster on the property and in no event stored, either in the basment or outside of the unit;

F. Tenant shall not place on the exterior of the Premises or visible from the exterior (including, but not limited to windows, doors and entrance lobbies) any signs other than those which shall first have been allowed by the Town of Londonderry Zoning Regulations and approved by Landlord.

G. Tenant shall not perform any act or carry on any practice which may damage the Premises or any part of the building, or cause any offensive odors or loud noise (including, but not limited to, the

use of loudspeakers, or musical instruments), or cause a nuisance or menace to or otherwise disturb any other tenant or other persons in the building;

H. Tenant shall not use any portion of the premises for storage or other services, except in conjunction with its business.

**10. ASSIGNMENT - SUBLEASING.** Tenant shall not assign this Lease or sublet (which term, without limitation, shall include the granting of concessions, licenses, and the like) the whole or any part of the Premises without in each instance having first received the express written consent of Landlord. Such consent shall not be unreasonably withheld and, in any case where Landlord shall consent to such assignment or subletting, Tenant shall remain fully liable for the lease obligations including, without limitation, the obligation to pay the rent and other amounts provided under this Lease.

**11. REPAIR - MAINTENANCE.**

A. The Landlord agrees to keep in good order, condition, and repair and replace, the roof, foundations and other structural portions of the Office and, subject to 11.B. below, all wiring, electrical systems, interior building appliances, plumbing and fixtures, heating, air conditioning and ventilation systems and to the extent originally delivered to Tenant by Landlord (except for glass, windows and the so-called Office front) except for any damage thereto caused by any act of Tenant, its employees, invitees, agents, customers, licensees, or contractors (which damage Tenant is liable for). This paragraph is not intended to refer to damage by fire or other insured risk to the Office and building.

B. Except as specifically herein otherwise provided, Tenant agrees that from and after the date that possession of the Office is delivered to Tenant, and until the end of the term, it will keep neat and clean and maintain in good order, condition and repair all interior nonstructural portions of the Office including but not limited to the Office front and the exterior and interior portions of all doors, windows, plate glass, fixtures, interior walls, floors, ceilings, signs (including exterior signs where permitted). Tenant shall, at Tenant's expense, repaint and refurbish the Office and any part to assure that it is kept in a first-class, tenantable, and attractive condition. There is excepted from this paragraph, however, damage to such portions of the Office originally delivered by Landlord to Tenant as is caused by those hazards which are covered by the policies of fire insurance with extended coverage endorsements carried by Landlord and/ or the Building Association on Landlord's behalf and described in Paragraph 14, unless caused by Tenant, its employees, agents or invitees. Tenant further agrees that the Office shall be kept in a clean, sanitary and safe condition in accordance with the laws of the State of New Hampshire, Zoning Regulations of the Town of Londonderry and in accordance with all direction, rules, regulations as applicable, of the Health Officer, Fire Marshall, Building Inspector and other proper officers of the governmental agencies having jurisdiction over the Office.

C. Tenant shall not make any alterations, renovations, improvements and/or additions to the Office without first obtaining, in each instance, the written consent of Landlord, which consent Landlord agrees will not be unreasonably withheld, except that Tenant may make non-structural alterations to the interior costing not more than Five Hundred Dollars ($500.00) upon condition that such alterations shall be made in accordance with all applicable laws and in a good and first-class, workmanlike manner. All alterations, additions, improvements and fixtures which may be made or installed by either Landlord or Tenant upon the Office and which in any manner are attached to the floors, walls or ceilings (including, without limitation, any linoleum or other floor covering of similar character which may be cemented or otherwise adhesively affixed to the floor) shall remain upon the Office, and at the termination of this Lease shall be surrendered with the Office, without disturbance, molestation or injury. However, the usual trade fixtures and furniture which may be installed in the Office prior to or during the term at the cost of Tenant may be removed by Tenant from the Office upon the termination of this Lease if, but only if, Tenant is not then in default.

Tenant agrees, at its own costs and expense, to repair all damage to the Office resulting from or caused by such removal. Tenant shall not be entitled to remove any heating, ventilating or air conditioning equipment, nor shall Tenant be entitled to remove any store front or grate or related opening and closing mechanisms. Any personal property not removed by Tenant within ten (10) days of the termination of the Lease may be disposed of by Landlord without accountability to Tenant. Landlord reserves the right to request and require the Tenant to remove any or all Tenant improvements at the termination of this Lease, at the Tenant's expense.

## 12. INDEMNITY AND PUBLIC LIABILITY INSURANCE.

A. Neither Landlord, its agents, servants, employees nor contractors shall be liable for, and Tenant releases them from all claims for loss of life, personal injury or damage to the property or business sustained by Tenant (or any persons claiming through Tenant) resulting from any fire, accident, occurrence or condition in or upon the Office or any part thereof (including, without limitation, the parking lot or common areas), including but not limited to, such claims for loss of life, personal injury or damage resulting from:

    a. Any defect in or failure of plumbing, heating or air conditioning equipment, electrical wiring or installation thereof, water pipes, stairs, railings or walks;

    b. Any equipment or appurtenances being out of repair;

    c. The bursting, leaking or running of any tank, water closet, or any pipe (including, but not limited to water, waste or drain pipe) in, upon or about the building;

    d. The backing up of any sewer pipe;

    e. Water, snow or ice being upon or coming through the roof or any other place upon or near the Office or the building of which the same is a part.

    f. The falling of any fixture, plaster or stucco.

    g. Broken glass.

    h. Any act or omission of other tenants or other occupants of the building.

    i. Any act or omission of Landlord, its agents, servants and employees whether occurring on, prior to, or subsequent to the date of this Lease, except to the extent such damage is caused by the negligent acts or omissions of Landlord, its agents, servants and employees.

B. Tenant agrees to maintain in full force during the term a policy of public liability and property damage insurance, and under which the insurer agrees to indemnify and hold Landlord and those in privity of estate with Landlord harmless from and against all cost, expense and/or liability arising out of or based upon any and all claims, accidents, injuries and damages mentioned in Subparagraph (A) of this Paragraph 12. Each such policy shall be non-cancelable with respect to Landlord without thirty (30) days prior written notice to Landlord and a duplicate original or certificate shall be delivered to Landlord. The minimum limits of liability of such insurance shall be One Million Dollars ($1,000,000) for injury (or death) to any one person and One Million Dollars ($1,000,000) for injury (or death) to more than one person and One Hundred Thousand Dollars ($100,000) with respect to damage to property.

C. Tenant agrees to use and occupy the Office and to use such other portions of the building as it is herein given the right to use at its own risk and that Landlord shall have no responsibility or liability for any loss of, or damage to, fixtures or other personal property of Tenant. The provisions of Paragraph 12(C) shall apply prior to and during the term of Lease.

**13. LANDLORD'S ACCESS TO PREMISES.** Landlord may, upon 24 hours prior notice and, when possible, accompanied by Tenant's representative, enter to inspect the Office and/or may show the Office to others. At any time within the last six months of the term, Landlord may show the Office to prospective tenants between the hours of 9:00 A.M. and 5:00 P.M. on any business day. Landlord also reserves the right, after notice of intention to so (except that in the event of an emergency, no notice shall be required), to enter the Office at any time to make such repairs, additions or alterations as it may deem necessary for

the safety, improvement or preservation of the building in which the Office is contained. Landlord assumes no obligation to do so, however, and performance by Landlord shall not constitute a waiver of Tenant's default. Landlord shall in no event be liable to Tenant by reason of performance by Landlord of any work in, upon, above or under the Office. If Tenant has vacated or deserted the Office or, in the event of an emergency, or if in any other instance after Landlord has given notice of Landlord's intention to enter and the Tenant or Tenant's employees are not personally present to permit an entry into the Office, then in any such event, Landlord or its agents or employees may enter the same by the use of reasonable force without rendering Landlord liable therefore, and without affecting in any manner Tenant's obligations under this lease. The exercise of any such reserved right by Landlord shall not be deemed an eviction or disturbance of Tenant's use and possession of the Office and shall not render Landlord liable in any manner to Tenant or to any other person, nor shall the same constitute any grounds for an abatement of any rent.

### 14. INSURANCE.

A. Landlord shall keep the Office insured against loss or damage by fire or other casualty, with the usual extended coverage endorsements and such other insurance as the then holder of the first mortgage on the building which includes the Office shall require, in amounts near replacement value above walls.

B. Tenant agrees that it shall keep its property including but not limited to leasehold improvements, fixtures, merchandise and equipment insured against loss or damage by fire or other casualty with the usual extended coverage endorsements. Tenant assumes all risk of damage to its own property arising from any cause whatsoever, including, without limitation, loss by theft or otherwise.

### 15. TOTAL OR PARTIAL DESTRUCTION.

A. If the Office is substantially damaged or destroyed by fire or other casualty, Landlord shall have the right to terminate this Lease in the manner described hereafter. If by reason of such occurrence, the Office is rendered untenantable in whole or in part, and if this Lease is not terminated, Landlord, at its own expense, will cause the damage to be repaired and the Base Rent meanwhile shall be abated proportionately as to the portion of the Office rendered untenantable until delivery of the Office as stated in Exhibit C. If the Office is damaged or destroyed by a fire or casualty not fully covered by the Landlord's policies of fire and extended coverage insurance; or if Landlord has the option to terminate, and the Landlord, at its option, decided not to repair and restore the Office, Landlord and Tenant shall have the right, to be exercised by notice in writing delivered to the other within sixty (60) days from and after the occurrence of such damage or destruction, to elect termination of this Lease. Either party shall have the right, to be exercised by notice in writing, delivered to the other within thirty (30) days from and after any occurrence which rendered the Office wholly untenantable, to cancel this Lease. If said destruction of the Premises occurs within the last year of the term, the cancellation shall take effect in ninety (90) days from and after the delivery of such notice by the other party, and, in such event, this Lease shall cease as of the cancellation date and the rent shall be prorated. If Landlord shall commence repairs or reconstruction of the damaged portions of the Office during the period prior to the cancellation date, the tenancy shall remain in effect and that notice of cancellation shall be considered void. In no event shall Landlord be obligated to expend for any repairs or reconstruction pursuant to this paragraph an amount in excess of the insurance proceeds recovered by it and allocable to the damage to the Office after deduction of amounts required to be paid to Landlord's mortgagor. Nothing in this Paragraph shall be construed to permit the abatement in whole or in part of the Additional Rent in Paragraphs 5 and 6 hereof. Tenant shall carry such disruption insurance at its expense.

B. If the Landlord is required to repair or reconstruct the Leased Premises, its obligation shall be limited to the building shell and other construction to be performed by Landlord pursuant to Exhibit C. Tenant, at its expense, shall promptly perform all repairs or restoration not required to be done by Landlord and shall promptly re-enter the Office and commence doing business in accordance with the provisions of this Lease. Landlord shall not be liable for delays occasioned by

adjustment of losses with insurance carriers or by any other cause provided the Landlord has proceeded in good faith.

C. Notwithstanding anything set forth herein to the contrary, Tenant shall be responsible for all repairs and replacements of damage and/or destruction of the Office necessitated by burglary or attempted burglary or any other illegal or forcible entry in the Office.

D. Tenant covenants that it will give notice to Landlord of any accident or damage, whether such damage is caused by insured or uninsured casualty, occurring in, on or about the Office within twenty-four (24) hours after Tenant has or should have had knowledge of the occurrence of such accident or damage.

### 16. EMINENT DOMAIN.

A. If all of the Office is taken by condemnation or right of eminent domain, either party, upon written notice to the other, shall be entitled to terminate this Lease, provided that such notice is given not later than thirty (30) days after Tenant has been deprived of possession. If any part of the Office is taken or condemned then either party may terminate this lease. If this Lease is not terminated, Landlord agrees promptly after such taking or condemnation, and the determination of Landlord's award, to expend so much as may be necessary of the net amount which may be awarded to Landlord in such condemnation proceedings in restoring like Office to an architectural unit as nearly like its condition prior to such taking. Should the net amount so awarded to Landlord be insufficient to cover the cost of restoring the Office, as estimated by Landlord, Landlord may, but shall not be obligated, supply the amount of such insufficiency and restore the Office with all reasonable diligence as above provided, or terminate this Lease. The Landlord shall at no time be responsible for Tenant's improvements in any casualty. Where Tenant has not already exercised any right of termination accorded to it under this paragraph, Landlord shall notify Tenant of Landlord's election not later than ninety (90) days after the final determination of the amount of the award.

B. Out of any award for any taking of the Office, in condemnation proceedings or by right of eminent domain, Landlord shall be entitled to receive and retain the amounts awarded for the Office and for Landlord's business loss. Tenant shall only be entitled to receive and retain any amounts which may be specifically awarded to it in any such condemnation proceedings, because of the taking of its trade fixtures or improvements.

C. In the event of any such taking of the Office, the Base Rent and Additional Rent (or a fair and just proportion thereof) shall be suspended or abated according to the nature and extent of the damage sustained.

### 17. LANDLORD'S REMEDIES.

A. It is covenanted and agreed that if Tenant shall neglect or fail to perform or observe any of the covenants, terms, provisions or conditions contained in this Lease within fifteen (15) days after written notice of default, or if Tenant's estate shall be taken on execution or by other process of law; or if Tenant shall be judicially declared bankrupt or insolvent according to law; or if any assignment shall be made of the property of Tenant for the benefit of creditors; or if a receiver, guardian, conservator, trustee in involuntary bankruptcy or other similar officer shall be appointed to take charge of all or any substantial part of Tenant's property by a court of competent jurisdiction; or if a petition shall be filed for the reorganization of Tenant under any provisions of the Federal Bankruptcy Code now or hereafter enacted, and such proceeding is not dismissed within sixty (60) days after it is begun; or if Tenant shall file a petition for such reorganization, or for arrangement under any provisions of the Federal Bankruptcy act now (or hereafter enacted) and providing a plan for a debtor to settle, satisfy or extend the time for the payment of debts - then, and in any said cases, (notwithstanding any license of any former breach of covenant or waiver of

the benefit hereof or consent in a former instance), Landlord lawfully may, at any time and with such notice as required by law, pursue all legal and equitable remedies provided by applicable law, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and upon such entry, this Lease shall terminate. The Tenant covenants and agrees, notwithstanding any entry or re-entry by Landlord, whether by summary proceedings, termination, or other lawful means, that Tenant shall, as of the date of such termination, immediately be liable for and pay to Landlord the entire unpaid rental and all other balances due under this Lease for the remainder of the term, minus any replacement rent to be received by the Landlord under a new lease with a third party after dedeucting the re-let costs of the Landlord; it being understood that Landlord shall have a duty to mitigate its damages.

Further, if this Lease shall be guaranteed on behalf of Tenant, all of the foregoing provisions with respect to bankruptcy of Tenant shall be deemed to read; "Tenant or the guarantor hereof."

B.    Landlord shall in no event be in default in the performance of any of its obligation hereunder unless and until Landlord shall have failed to perform such obligation within thirty (30) days or such additional time as is reasonably required to correct any such default after written notice by Tenant to Landlord property specifying wherein Landlord has failed to perform any such obligation.  In the case of a failure of a building system or heat or air conditioning or water or any other condition which affects the Tenat's ability to use the Prmises, the foregoing period for Landlord performance shall be 15 business days.

**18. COVENANT OF QUIET ENJOYMENT.** Tenant, subject to the terms of this Lease, on payment of the rent and observing, keeping and performing all of the terms and provisions of this Lease on its part to be observed, kept and performed, shall lawfully, peaceably and quietly have, hold, occupy and enjoy the Office during the term without hindrance or ejection by any persons lawfully claiming under Landlord.

### 19. ESTOPPEL CERTIFICATE - SUBORDINATION - ATTORNMENT - MORTGAGE.

At any time, and from time to time, upon the written request of Landlord or any mortgagor, Tenant within twenty (20) days of the date of such written request shall execute and deliver to Landlord and/or such mortgagor, without charge and in a form satisfactory to Landlord and/or such mortgagor, a written statement (i) ratifying this Lease; (ii) confirming the commencement and expiration dates of the term of this Lease; (iii) certifying that Tenant is in occupancy of the Office, and that the Lease is in full force and effect and has not been modified, assigned, supplemented or amended except by such writings as shall be stated and agreeing not to amend, modify or cancel this Lease without mortgager's written consent; (iv) certifying that all conditions and agreements under this Lease to be satisfied or performed by Landlord have been satisfied and performed except as shall be stated; (v) certifying that Landlord is not in default under the Lease and there are no defenses or offsets against the enforcement of this Lease by Landlord, or stating the defaults and/or defenses claimed by Tenant; (vi) reciting the amount of advance rent, if any, paid by Tenant; and the date to which such rent has been paid; (vii) reciting the amount of security deposited with Landlord, if any; and (viii) any other information which Landlord or the mortgagor shall require. The failure of Tenant to execute, acknowledge and deliver to Landlord and/or any mortgagor a statement in accordance with the provisions of this Paragraph within the period set forth shall constitute acknowledgement by Tenant which may be relied upon by any person holding or intending to acquire any interest whatsoever in the Office or the building that this Lease has not been assigned, amended, changed or modified, is in full force and effect and that the Base Rent, Tenant's share of Common Area Expenses and Taxes and Utility Charges have been duly and fully paid not beyond the respective due dates immediately preceding the date of the request for such statement and shall constitute as to any persons entitled to rely on such statements a waiver of any defaults by Landlord or defenses or offsets against the enforcement of the Lease by Landlord which may exist prior to the date of the written request. Tenant agrees that, except as hereinafter provided, this Lease is, and all of tenant's rights are, subject and subordinate to any mortgage, leases of Landlord's property (in sale-leaseback) pursuant to which Landlord has or shall retain the right of possession of the Leased Premises or security instruments (collectively called Mortgage) that now exist, or may hereafter be

placed upon the Office. Notwithstanding anything to the contrary set forth above, any Mortgagor may at any time subordinate its Mortgage to the Lease, without tenant's consent, by execution of a written document subordinating such Mortgage to this Lease

**20. TENANT'S EQUIPMENT.** All equipment placed on the demised Premises by Tenant during the term hereof shall remain the sole property of Tenant and shall be removed by it at the termination of this lease. Providing that such removal will not materially damage the property of Landlord, or if damage shall result, the Tenant shall repair such damage in order to reinstate the premises to a condition as received when the tenancy first commenced. Nothing herein contained shall be construed to pertain to any improvements made or fixtures placed upon the premises which shall become the sole property of the Landlord as hereinafter set forth.

**21. HOLDING OVER BY TENANT.** In the event Tenant remains in possession of the demised Premises after the term of this Lease or any extension hereof, such holding over shall be construed as creating a tenancy from month to month at a rental equal to the average monthly rental ("average monthly rental" meaning the base rent and any additional rent due under this Lease) payable during the last year of such term plus 100 percent increase.

**22. MECHANIC'S LIEN.** Tenant agrees immediately to discharge (either by payment or by filing of the necessary bond, or otherwise) any mechanic's lien, materialmen's lien, or other lien against the Office and/or Landlord's interest therein, which liens may arise out of any payment due for or purported to be due for, any labor, services, materials, supplies, or equipment alleged to have been furnished for Tenant in, upon or about the Office.

**23. NOTICES.** Any notice which may be required or permitted to be given under any provision of this Lease shall be deemed to have been effectively given and received upon deposit in the United States certified mail, postage prepaid, addressed as follows:

LANDLORD:  Buttrick Road Office Park LLC
1 E Commons Drive Unit 30
Londonderry, NH 03053

TENANT  EnviroLogic LLC
25 Buttrick Road  Unit D-2
Londonderry, NH 03053

Either party may change its address for purposes of this provision by giving written notice of such change in the manner above provided.

## 24. MISCELLANEOUS PROVISIONS.

A. WAIVER. Failure on the part of either party to complain of any action or non-action on the part of the other, no matter how long the same may continue, shall never be deemed to be a waiver by the other of any of its right hereunder. Further, no waiver at any time of any of the provisions by Landlord shall be construed as a waiver of any of the other provisions and that a waiver at any time of any of the provision shall not be construed as a waiver at any subsequent time of the same provisions. The consent or approval of Landlord to or of any action by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar act by Tenant. No payment by Tenant or acceptance by Landlord, of a lesser amount (that shall be due from Tenant to Landlord) shall be treated otherwise than as payment on account. The acceptance by Landlord of a check for a lesser amount with an endorsement or statement thereon, or upon any letter accompanying such check, that such lesser

amount is a payment in full, shall be given no effect, and Landlord may accept such check without prejudice to any other rights or remedies which landlord may have against Tenant.

B.  INVALIDITY OF PARTICUALR PROVISION. If any term or provision of this Lease, or its application to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

C.  GOVERNING LAW. This Lease shall be governed exclusively by the provisions hereof and by the laws of the State of New Hampshire.

D.  RECORDINGS. Tenant agrees not to record this Lease, but each party agrees, on request of the other, to execute a Memorandum of Lease in recordable form and reasonably satisfactory to either party's attorney. In no event shall such Memorandum set forth the rental or other charges payable by Tenant under this Lease and any such Memorandum shall expressly state it is executed pursuant to the provisions contained in this Lease, and is not intended to vary its terms.

E.  PARAGRAPH HEADINGS. The paragraph heading throughout this instrument are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provisions of this Lease.

F.  TENANT DEFINED - USE OF PRONOUN. Tenant shall mean each person or party mentioned as a Tenant whether one or more; and if there is more than one Tenant, any notice required or permitted by terms of this Lease may be given by or to any one of them, and shall have the same force and effect as if given by or to all. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, or a group of two or more individuals or a corporation. The necessary grammatical changes required to make the provisions of this Lease apply in the plural number where there is more than one Landlord or tenant and to either corporation, associations, partnerships, or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

G.  ADDITIONAL RIGHTS. If it shall become necessary for either Landlord or Tenant to bring suit in order to collect the rent or to enforce any other provision of this Lease, Landlord and Tenant shall be entitled to collect reasonable legal fees from each other in connection with the aforesaid enforcement proceedings.

H.  PERFORMANCES OF TENANT'S AGREEMENT. Tenant agrees that it will perform all agreements on its part to be performed and observed and that it will promptly comply with such notices from Landlord; Further, if Tenant shall not comply with any such notice to the satisfaction of Landlord prior to the date on which such non-compliance would constitute an event of default (in addition to, and not in lieu or in limitation of any other remedy which Landlord may have pursuant to this Lease, at law or in equity) Landlord may, but shall not be obligated to, enter upon the Office and do the things specified in said notice. Landlord shall have no liability to Tenant for any loss or damage resulting in any way from such action and Tenant agrees to pay upon demand as additional rent any expense incurred by Landlord in taking such action. Notwithstanding the foregoing, Landlord's performance of any or all of Tenant's covenants shall not release Tenant from liability for non-performance.

I.  INTERPRETATION. Whenever in this Lease provision is for the performance of any act by any party, it is understood and agreed that said act shall be done by such party at its own cost and expense, unless a contrary intent is expressed. All measurements of leasable space shall be from the outside walls and the middle of interior walls.

10

**25. WHEN LEASE BECOMES BINDING.** Notwithstanding the execution of this Lease by Landlord and/or Tenant and notwithstanding anything contained in this Lease to the contrary, employees or agents of Landlord have no authority to make or agree to make a lease or any other agreement or undertaking in connection herewith. The submission of this document for examination and negotiation does not constitute an offer to lease, or a reservation of, or option for, the Office, and this document shall become effective and binding only upon the execution and delivery hereof by both Landlord and Tenant. All negotiations, considerations, representations, and understandings between Landlord and Tenant are incorporated herein and may be modified or altered only by agreement in writing between Landlord and Tenant, and no act or omission of any employee or agent of Landlord shall alter, change, or modify any of the provisions hereof. All rights obligations and liabilities given to, or imposed upon, the respective parties hereto shall extend to and bind their respective heirs, executors, administrators, trustees, receivers, legal representative, successors and assigns. If there shall be more than one Tenant, they shall all be bound jointly and severally by the terms, covenants and agreements herein.

**26. ILLEGAL ACTS.** Then Tenant, its employees, customers, suppliers, and assignees, shall not engage or be aware of any act which shall be deemed by a court of law to be illegal in nature on or about the premises leased. The Landlord may, at any time and without demand or notice, enter into and upon the Office and expel Tenant and those claiming through and under it and remove from it their effect (forcibly if necessary) without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used preceding breach of covenant, and upon such entry, this Lease shall terminate. The Tenant covenants and agrees, notwithstanding any entry or re-entry by Landlord, whether by summary proceedings, termination or otherwise, that Tenant shall as of the date of such termination immediately be liable for and pay to Landlord the entire unpaid rental and all other balances due under this Lease for the remainder of the term.

**27. SIGNS.** The Tenant shall be responsible for all his signs both affixed to building and in sign holders, as may be permitted. The signs shall be erected in accordance with all applicable regulations of the Town of Londonderry, and approved in writing by Landlord. The Landlord reserves the right to approve or disapprove of any and all signs in writing. The cost of any post, sign holder and any sign (including design, permitting, fabrication and erection) shall be totally born by the Tenant.

**28. SECURITY DEPOSIT AND ADVANCE PAYMENTS.** The LESSEE has deposited with LESSOR a Security Deposit of $2,231.25 as security for the punctual performance by the LESSEE of each and every obligation under this Lease. In the event of any default by the LESSEE, the LESSOR may apply or retain all or any part of such security to cure the default or to reimburse the LESSOR for any sum which the LESSOR may spend by reason of the default. In the case of every such application or retention, the LESSEE shall, on demand, pay to the LESSOR the sum so applied or retained which shall be added to the Security Deposit so that the same shall be restored to its original amount. If at the end of the Lease Term and any renewal thereof, the LESSEE shall not be in default under this Lease, but not otherwise, the Security Deposit or any balance thereof shall be returned to the LESSEE with interest at the rate of 2% per annum.

EXECUTED ON THIS _28th_ DAY OF APRIL 2009

WITNESS: _____

_____
B~~atrick~~ Road Office Park LLC
BY ,
LANDLORD

STATE OF NEW HAMPSHIRE
ROCKINGHAM, s.s.

On this ___ 2¥M ___ day of ___ April ___ before me personally appeared the above named, Robert Meissner, Manager of Buttrick Road Office Park LLC LLC., who being by me duly sworn, executed the foregoing Lease and stated said execution was his free act and deed.

_____
Notary Public

My commission expires:

TERRI J. HAMILTON
NOTARY PUBLIC
STATE OF NEW HAMPSHIRE
My commission expires July 13, 2010

WITNESS: _____          _____
                                             EnviroLogic LLC
                                             TENANT

Richard J. Wozmak, will personally guarantee the timely payment of the Tenant's financial obligation as stated in this Lease

WITNESS: _____          _____
                                             Richard J. Wozmak

STATE OF NEW HAMPSHIRE
ROCKINGHAM, s.s.

On this 28th day of April , before me personally appeared the above named, Richard J. Wozmak, as Manager of EnviroLogic, LLC, who being by me duly sworn, executed the foregoing Lease and stated said execution was his free act and deed and in the capacity stated

_____
Notary Public

My commission expires:

JUDY M. TINKHAM
MY COMMISSION EXPIRES
APRIL 15, 2014
NOTARY PUBLIC
NEW HAMPSHIRE